**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | **A CHAPTER 13 PROCEEDING** |
| Elizabeth A. Ursin | Case No. 17-37415 |
| Debtor. | Judge: A. Benjamin Goldgar |
| | Trustee: Glenn Stearns |
| | **(Lake County)** <br> North Branch Court <br> 1792 Nicole Lane <br> Round Lake Beach, Illinois 60073 |

**COMBINED RESPONSE IN OPPOSITION TO MOTION OF**
**CHAPTER 13 TRUSTEE TO EXAMINE ATTORNEY FEES UNDER**
**11 U.S.C. §§ 329, 330 AND RULE 2017 AND FOR INELIBILITY**

NOW COMES J. Kevin Benjamin ("JKB"), or ("Respondent") and in Response to the motion of the Chapter 13 Trustee ("Trustee") requesting an examination of his attorney fees in this matter pursuant to 11 U.S.C. §§329 and 330 and Fed. R. Bankr. P. 2017 (the "Motion"), Respondent respectfully states to the Court as follows:

**INTRODUCTION**

1) The Trustee brought the instant motion seeking a hearing to examine the attorney fees of Respondent pursuant to 11 U.S.C. §§ 329, 330 and Fed. R. Bankr. P. 2017 on December 22, 2017 [**Dkt. No. 12**].

2) With this Response, Respondent explains to the Court his position, if for no other reason than to present a fairer picture of what has led to this Motion than what the Trustee has portrayed, and to address the specific issues raised by the Trustee in its Motion.

**SUMMARY OF RESPONDENTS ARGUMENT**

3) The facts do not suggest that the pre-filing compensation received by Respondent exceeded the reasonable value of Respondents services. Therefore the Motion is without merit.

4) The Trustee's position is without merit as it does not set forth any basis to support the claim of the Trustee that the $1,400.00 pre-filing retainer received by Respondent, is excessive in relation to the value of the services provided by Respondent, (which is the standard for a § 329 motion) and as to the benefit the chapter 13 estate received, a benefit that had a much greater value then the small $1,400 pre-filing retainer Respondent received, and a benefit to the chapter 13 estate that was directly attributable to the services the Respondent provided. Therefore the Trustee's § 329 Motion is without merit and must be denied.

5) The motive of the Trustee is not to protect the debtor from overreaching by the Respondent, but to punish Respondent, without any inquiry by the Trustee as to the facts and circumstances surrounding the filing of the instant chapter 13, the urgency of the filing and how it may relate to the benefit of the chapter 13 estate, without any inquiry as to how or why the debtor may be eligible in chapter 13 or any other chapter it could have been converted to, and without even allowing the debtor to file the schedules which may have alerted the Trustee as to any relevant facts or circumstances that the Trustee could have then inquired into with Respondent, nor did the Trustee base its ineligibility position from any schedules or debt list actually filed by the debtor in the instant chapter 13. This is an impermissible purpose for the use of a § 329 motion. Therefore the Trustee's § 329 Motion is without merit and must be denied.

6) Since the Trustee's motive is not to protect the debtor from overreaching by the Respondent, and as the value of Respondents services is in excess of the small pre-filing retainer paid by the debtor to the Respondent, the § 329 Motion of the Trustee requesting this Court examine the small $1,400 pre-filing retainer received by Respondent, to cancel the agreement between the debtor and Respondent, and to order the return of the small $1,400 pre-filing retainer received by Respondent to the debtor, is without merit and should be denied, with no further hearing on this subject should be scheduled.

**SUMMARY OF TRUSTEE'S ARGUMENT**

7) The Trustee suggests this Court should investigate the debtor's transaction and agreement with Respondent to "*deem the fees sought*" to be excessive based upon the value of the services," and to potentially cancel the agreement and order the return of any funds paid by the debtor to Respondent.

8) The Trustee maintains there was no value as to Respondents services in the instant chapter 13 based purely on the debtor's prior dismissal pursuant to §109(e) in her prior case for reasons set forth in that unrelated prior chapter 13, where the debtor was represented by another attorney who did not defend that prior motion, and who filed the previous schedules and debts, in the prior chapter 13 that the Trustee based his prior §109(e) motion on.

9) Therefore the Trustee maintains that the services provided by Respondent had no value and therefore "*any fee request*" should be denied.

**FACTUAL SUMMARY OF TRUSTEE'S MOTION**

10) The Trustee sets forth that the Debtor had a prior chapter 13 case, case number 17-13765, which was dismissed for ineligibility pursuant to §109(e) on October 20, 2017.

11) The position of the Trustee is based purely on the debtor's prior chapter 13 which was based upon schedules filed in that prior unrelated chapter 13 by another attorney, and where the prior dismissal pursuant to §109(e) in that prior case for reasons set forth in that unrelated chapter 13, where the debtor was represented by another attorney who did not defend the Motion, and who filed the previous schedules and debts that the Trustee based his prior §109(e) motion on.

*Debtors Prior Dismissal* under §109(e)

12) Paragraphs 4-13 in the Motion of the Trustee set forth the Trustees entire argument and position. Of those paragraphs in the Motion, paragraphs 4-8 are specific to the Debtors dismissal under §109(e) per the request of the Trustee in that prior chapter 13.

3

13) The Trustee summarizes his past motion to dismiss under section §109(e) related to debt limit issues in the prior chapter 13, and argues that the Debtor was therefore not eligible to file her instant case under chapter 13, reasoning that the debtor is ineligible due to the schedules she filed in the prior chapter 13 case, not the instant chapter 13, where the prior dismissal was based upon schedules filed in that prior unrelated chapter 13 by another attorney.

14) The Trustee Motion offers nothing as to any specific debts, characterization or amount of debts, claimed by the debtor in the instant and relevant chapter 13, or to any investigation by the Trustee into the current and instant chapter 13.

## BACKGROUND

15) On December 18, 2017, Elizabeth A. Ursin (the "Debtor") contacted Respondent around 5:30 pm., requesting assistance.

16) Respondent consulted with the Debtor later that evening, in relation to her home residence that was in foreclosure and told Respondent it was scheduled for sale the morning of December 19th.

17) Respondent inquired into the facts and circumstances surrounding the sale, the foreclosure and situation and inquired as to any previous filing.

18) Respondent discussed good faith v. bad faith filings and advised the Debtor that failure to make previous plan payments could be used against her and inquired as to why they were not made. The Debtor said she was going through a very tough time, her husband was allegedly going to make the chapter 13 payments but had left her and they were not speaking.

19) Respondent went over her former proposed plan and asked how those payments would now be made and Debtor stated her adult son was living in the home and working full time and willing to assist to save the home.

20) Respondent downloaded from Pacer the filed schedules as well. Nothing in the previously filed schedules indicated any debt limit issue.

4

21) Respondent advised the Debtor that an automatic stay would only be good for 30-day and the procedure and process of filing a motion to extend the stay with deadlines to filing and hearing of that type of motion.

22) Respondent checked with Judicial Sales and confirmed the property was to be auctioned off the next morning. It appeared the property would be sold for as little as $50,189.20. Respondent checked some online real property valuation reports for value, ordered an online AVM report immediately, and checked the tax assessors reports to further ascertain the value of the home in Lake Zurich, Illinois. The tax assessor's valuation was $331,441.00 the online paid for AVM report, attached hereto and made apart hereof as **Exhibit No. 1**, had an estimated value of $363,900.00 with a high value of $436,700.00.

23) Per the credit reports of the Debtor it appeared the foreclosing mortgagee was owed around $60,000.00 as was reported by Select Portfolio Services, ("SLS") the servicer for Wells Fargo, on December 11, 2017, (which was within the past 7 days from the December 18, 2017 credit report).

24) Therefore it appeared there may be as much as $300,000-$370,000 equity in the property. That was significant value and would become property of the chapter 13 estate upon filing of the petition. Respondent discussed potential chapter 13 plan solutions including sale of the property or refinance of the property to pay off the loan and solve the foreclosure issues. All options that would have to be considered post filing as there was no time to do anything else. But it sure looked like there would be a feasible chapter 13 plan to file.

25) Respondent checked Pacer and the court docket in the dismissed case and the docket indicated that prior case was dismissed for failure to maintain plan payments. It did not indicate it was dismissed for any debt limit issue. The docket is as follows:

26) The docket on the prior dismissed chapter 13 shows that is was dismissed for failure to make plan payments, not for debt limits.

5

27) That docket shows still as follows [**Dkt. No. 45**] in prior dismissed chapter 13:

| 10/20/2017 | 45 (2 pgs; 2 docs) | Order Granting Trustee's Motion To Dismiss Debtor (Related Doc # 44), Granting Motion to Dismiss Debtor for Failure to Make Plan Payments (Related Doc # 44). Signed on 10/20/2017. (Rodarte, Aida) (Entered: 10/24/2017) |
|---|---|---|

28) The docket in the prior chapter 13 did not indicate a dismissal for ineligibility thus there was no reason to look for or pull any debt limit ineligibility dismissal motions the Trustee filed as it would appear, even from a cursory review of that docket, that the dismissal was for lack of plan payments and would not indicate any other type of dismissal motion that may have been filed would have been ruled upon by this Court and that is not uncommon.

29) In fact in the current instant chapter 13 the court docket also indicates that the prior chapter 13 was dismissed for failure to make plan payments, not for debtor ineligibility.

30) Notice of Debtor's Prior Filings [**Dkt. No. 7**] from December 20, 2017 shows:

| **Debtor** | **Case No** | **Note** |
|---|---|---|
| Elizabeth A. Ursin | 17-13765 | Ch13 filed in Illinois Northern Bankruptcy on 05/01/2017, Dismissed for failure to make plan payments on 10/20/2017 |
| | | (Admin) (Entered: 12/20/2017) |

31) The Respondent worked all night to try to save the property and drafted an emergency petition including a detailed notice service list that included every single (and lengthy) notice party from the prior chapter 13. The list included around 50 parties, the great majority of whom Respondent had to manually enter into the system for filing, and prepared the filing for the Debtor's review.

32) Respondent was back in his office at 7 am to ascertain from the Debtor as to any corrections or modifications and to have the Debtor sign the documents so the Respondent could urgently file the emergency petition to stop the sale of the home and to attempt to preserve for the estate the hundreds of thousands of dollars in equity.

6

33) On December 19, 2017 Respondent filed the petition for relief under chapter 13 of the U.S. bankruptcy code (the "Petition") on behalf of the Debtor [**Dkt. No. 1**], as an emergency filing in order to save the residence from foreclosure and preserve the equity for the benefit of the chapter 13 estate.

34) Further on December 19, 2017 Respondent filed his disclosure of compensation [**Dkt. No. 6**].

35) The disclosure of compensation stated that a $1,400.00 pre-filing, pre-petition payment was paid by Debtor to Respondent before the Petition was filed, and was not property of the estate.

36) On December 21, 2017 Michael K. Desmond, chapter 7 trustee, filed a claim, in the unsecured amount of $1,088,951.45, ("Claim No. 1") in the instant chapter 13. This was 2 days after the emergency petition had been filed and prior to any schedules being filed on the Debtors behalf.

37) Respondent reviewed Claim No. 1 and alerted the Debtor. The Respondent questioned the Debtor about the circumstances surrounding the claim. Respondent noted that no such claim was scheduled in her prior chapter 13 and advised this could be used to defeat a motion to extend the automatic stay that would place the home and all that equity in jeopardy again. The Debtor initially indicated she knew nothing about it and was never served, and that was the reason it was not scheduled she said.

38) Respondent obtained the attached exhibits and showed the Debtor and further inquired into the circumstances surrounding the filing of Claim No. 1 that showed it was based upon a Complaint for Mandamus to Produce Records. Respondent discussed debt limit potential motions and discussed a potential conversion to a chapter 11 if necessary.

39) Respondent researched some state law to further properly advise and consult with the Debtor on this new issue and told the Debtor he could file a motion to vacate that judgement and

advised the Debtor that further research would be needed to see how that may affect that debt being contingent or unliquidated under the bankruptcy code.

40) Respondent discussed unliquidated and contingent debts with the Debtor explaining the schedules needed to be filed in the 14-day period from the petition date and we need to go over any contingent or unliquidated characterizations that can potentially be made regarding various debts.

41) On December 22, 2017, just 3 days after the emergency petition for relief was filed without the schedules or remaining documents, the Trustee filed a motion to dismiss the debtor for ineligibility [**Dkt. No. 10**].

42) Further on December 22, 2017, just 3 days after the emergency petition for relief was filed without the schedules or remaining documents, the Trustee filed a motion to examine fees of Respondent [**Dkt. No. 12**].

**RELEVANT AUTHORITY**
*Section 329*

43) Section 329(a) of the Code requires every attorney representing a debtor in a bankruptcy case to "file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case . . . ." 11 U.S.C. § 329(a).

44) Section 329(b), in turn, provides that "[i]f the compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive . . . ." 11 U.S.C. § 329(b).

45) Section 329 reflects a Congressional concern that a debtor's payments to his attorney present a "serious potential for evasion of creditor protection provisions of the bankruptcy laws." H.R. Rep. No. 95-595, at 329 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6285. Those

payments present a "serious potential for overreaching by the debtor's attorney," id., because a "failing debtor" may be tempted "to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure," In re Perrine, 369 B.R. 571, 580 (Bankr. C.D. Cal. 2007) (internal quotations omitted); see also Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.), 4 F.3d 1556, 1565 (I0th Cir. 1993). Section 329 accordingly provides a vehicle to subject a debtor's payments to his attorney to "careful scrutiny." H.R. Rep. No. 95-595, at 329, 1978 U.S.C.C.A.N. at 6285.

46) But the purpose of section 329 is limited: it regulates "the relationship between a debtor and the debtor's attorney." Jn re Merriam, 250 B.R. 724, 731 (Bankr. D. Colo. 2000); see also Jn re Gorski, 519 B.R. 67, 74 (Bankr. S.D.N.Y. 2014). The purpose of section 329 is "to protect debtors and the estate." Merriam, 250 B.R. at 731; see also In re Wegesend, No. 13-01686, 2014 WL 3051218, at *4 (Bankr. D. Haw. July 3, 2014). Its purpose is not to protect the bankruptcy system as a whole by deterring improper filings. Bankruptcy Rule 901 1 serves that purpose. Jn re Haylock, No. 07-00235, 2007 WL 3287544, al *1 (Bankr. D.D.C. Nov. 5, 2007) (describing the separate purposes of section 329 and Rule 901 1). The sole question under section 329, then, is whether "the fee charged by the attorney is excessive - i.e., that it exceeds the reasonable value of the services provided . . . ." Jn re Geraci, 138 F.3d 314, 318 (7th Cir. 1998).

47) "The bankruptcy court has the broad power and discretion to award or deny attorney fees, and, indeed, a duty to examine them for reasonableness."; In re Redding, 247 B.R. 474, 478 (B.A.P. 8 Cir. 2000) ("The plain language of § 329 provides that there must first be a determination that the fees are excessive."); In re Bost, 341 B.R. 666, 689 (Bankr. E.D. Ark. 2006). Fed. R. Bankr. P. 2017(a) provides the procedural mechanism by which fee agreements are to be brought before the Court for review and in the case at hand the Trustee

never brought a motion under Fed. R. Bankr. P. 2017(a) while there was an estate to administer or while the court had jurisdiction to review Respondent's fees.

48) *In re Wiredyne, Inc.*, 3 F.3d 1125 (7th Cir. 1993). The court's power to order disgorgement of prepetition fees under § 329 is a matter of discretion. The existence of a conflict is a relevant factor in the analysis, but ultimately, the court should weigh the equities of the case in determining whether fees are unreasonable or excessive under § 329.

## ARGUMENT

*The Relief Sought By The Trustee In The Motion And Proposed
Order Is Not A Proper Cause Under 11 U.S.C. § 329(b) or Fed. R. Bankr. P. 2017(a)*

49) SLS has not filed a claim in the current instant chapter 13, but the claim the claim of SLS that they filed in the prior dismissed chapter 13 ("Claim No. 10") on September 8, 2017 is attached hereto and made a part of this Response as **Exhibit No. 2**, in the amount of $58,741.20 which supports that there are hundreds of thousands of dollars in equity in the property of the estate, that was preserved by the emergency actions taken by Respondent.

50) In fact the Debtor could simply refinance or sell the property and no longer need the chapter 13 so there are several legitimate reasons for the filing of the chapter 13 and that it was for a proper purpose. The petition was not filed to hinder or delay any creditor. The property was going to be sold for $50K but may be worth as much as $436,700.00. Yet the Trustee says the estate received no value? The Debtor received no value? That is absurd.

51) The Trustee filed a motion for eligibility 3 days after the filing of the petition and without the Debtor having filed schedules, that at that time were not due. In a good faith filing case eligibility can be determined by the schedules filed. The Trustee has made no allegation of bad faith, thus eligibility would then need to be determined by the schedules that were to be

filed and how the debts were scheduled and characterized. Yet somehow the Trustee feels he is not bound by the code and case law and can determine on his own who is eligible or not.

52) In fact the Trustee states in his motion (paragraph 5) that when Claim No. 1 was filed the Trustee determined, on his own, that this was a debt limit case. Claim No. 1 was filed 2 days after the petition for relief and before the Debtors schedules were due to be filed.

53) The Trustee does not represent the Debtor, Respondent does. It would be for Respondent to contest Claim No. 1 or not contest and move to convert to chapter 11 or defend the new trustee motion for ineligibility.

*The Trustee's Motion is Premature and Filed in Bad Faith For an Improper Purpose*

54) The Trustee's motion was premature. This Motion was filed prior to the filing of any schedules. Respondent was immediately in contact with the Debtor discussing Claim No. 1, potential ramifications and options and began working with Debtor to diligently address possible remedies, including, but not limited to, moving to overturn the default judgment, conversion to chapter 11, among them. However the Trustee just filed an immediate motion to examine fees accusing Respondent of doing nothing without undertaking any investigation at all as to what the facts were behind the filing of the petition.

55) In fact the Trustee's actions are very suspicious. What was the hurry to get these motions on file and to try to disgorge Respondents attorney fees, 3 days after the petition was filed and before schedules, and other required documents and the chapter 13 plan were due?

56) The Trustee offers zero support to suggest that a mere $1,400 pre-filing retainer paid to Respondent is unreasonable. The only argument the Trustee makes is that the Trustee had filed a debt limit motion in the prior chapter 13 and that Claim No. 1 was filed in the instant chapter 13 (just two days after the filing of the petition) and the Trustee decided to play attorney and to play judge and issued a "ruling" that debt limits were an issue and that Respondent's attorney fee had no value and no benefit and that the Trustee, Glenn Stearns,

11

who is not even an attorney or a judge, "ruled" that there was nothing the Debtor could do period.

57) That is not only an absurd position but the Trustee made his unauthorized and improper "ruling" while having no understanding of the facts surrounding anything, without allowing the schedules to be filed, without allowing Debtors real attorney, the Respondent, to properly represent and analyze the fast-moving circumstances surrounding the filing of the petition. Without any clue as to what was going on or why the Trustee just rushed to judgment and accused Respondent, falsely, of providing no value.

58) These speaks to the Trustees bad faith as it is obvious the Trustee's motives in filing the Motion against Respondent has nothing to do with protecting the Debtor from unreasonable fees of Respondent.

*The Trustees Argument that a Cursory Review of the Debtors*
*<u>Prior Chapter 13 Shows the Debtor to Not be Eligible is without Merit</u>*

59) The Trustee alleges in paragraph 9 of the Motion that even a "cursory review of the dockets for the Debtor's prior case would show the Debtor is not eligible. As set forth in the background section a cursory review of the docket in the prior case AND in fact a cursory review of the docket in the instant case both show the prior case was dismissed for failure to make plan payments. That may not be the case but that is what it shows. In fact if the Trustee would have bothered to do his own cursory review he would have seen that, but he was too busy trying to rush into filing his motions within 3-days of the filing of the petition and was not interested in any real facts or circumstances surrounding it.

*<u>Even Now The Debtors May Be Under The Debt Limits</u>*

60) The Trustee made no claim of bad faith in the Motion. With no claim of bad faith response to that motion with no bad faith claim the Seventh circuit has held that the court shall rely on the schedules filed which indicate eligibility. If bad faith you can look beyond the schedules.

12

Yet the Trustee filed both, his motion to dismiss for ineligibility and this Motion to exam Respondents attorney fees, which appears to only be based on the Trustees motion for ineligibility that has not been ruled on, within just 3-days of the filing of the petition in this instant case, and without any schedules being filed, and without any schedules being due to be filed at the time. Yet somehow the Trustee claims its automatically a debt limit issue and attempts to disgorge Respondents well-earned attorney fees.

61) The Motion is only based upon the Trustee's pending motion for ineligibility that has not been ruled on by his honor. There is no order from the Court saying this Debtor is not eligible yet the Trustee filed a Motion to exam attorney fees anyway, three days after the petition was filed and the same day the Trustee filed his pending motion for ineligibility. I guess the Trustee does not fee he has to wait for the Court to make rulings, he will do it for his honor.

62) In fact it is the Trustee, Glenn Stearns himself who has the duty and obligation to review and inquire into claims that are filed. In the previous case he did nothing. He made no investigation or effort to ascertain if that claim was valid or if Claim No. 1 filed in the instant case had merit and the Trustee was not going to allow Respondent who is the attorney for the Debtor to do his job so he rushed into two immediate motions to bully the Debtor out of the chapter 13.

63) It appears it worked as the Debtor decided not to pursue the chapter 13 any longer, even if allowed to, and will look into other remedies and options Respondent advised her about.

64) Under Illinois State law the default judgment related to Claim No. 1, entered December 21, 2016, can be vacated and challenged pursuant to 735 ILCS 5/2-1401, as Respondent was advising the Debtor and was prepared to do for the Debtor.

65) A default judgment like the one in this circumstance is considered a final judgment. Once the order or judgment is rendered final, the litigant must bring its motion within 30 days. 735

ILCS 5/2-1301. In the event that the litigant fails to bring a motion to vacate during the 30-day period, the court loses jurisdiction and the party's only option is to bring a petition to vacate the judgment under the more exacting standards provided for in section 2-1401. Blazyk v. Daman Express, Inc., 406 Ill. App. 3d 203, 206-07 (2d Dist. 2010).

66) Section 2-1401 entitles a party to bring a petition to vacate a final judgment or order after the 30-day period provided for under section 2-1301(e) has expired and for two years from the date of the entry of the judgment or order. 735 ILCS 5/2-1401. In order to ensure that a section 2-1401 petition is timely filed a party should file the petition no later than the day before the anniversary date of the entry of the final order or judgment. See generally Parker v. Murdock, 2011 IL App (1st) 101645, ¶ 21 (superseding its opinion withdrawn on Sept. 20, 2011). The two-year period excludes time during which the party seeking relief is under legal disability or duress and when the ground for relief is fraudulently concealed. 735 ILCS 5/2-1401(c). In the matter at hand the current petition was filed December 19, 2017 and the default judgment was entered December 21, 2016, so the time limits afforded under 735 ILCS 5/2-1401 still had a year to go.

67) The purpose of a section 2-1401 petition is to present a legal or factual challenge to a final judgment or order. Warren County, 2015 IL 117783, ¶ 31. While the petition is ordinarily used to bring facts to the attention of the trial court which, if known at the time of the judgment would have precluded its entry, the petition may also be used to challenge a purportedly defective judgment for legal reasons. Id. ¶ 31. Respondent and the Debtor conferred as to why she though the default judgment may have been defective. The Trustee, who has the obligation to look into the claims filed, abandoned his responsibility and did nothing and did so for some unknown reason to rush to file a motion to exam attorney's fees within 2-day of filing of the petition.

68) There are limited and extraordinary circumstances, however, where the court has ignored the diligence of the parties and granted the petition in the interest of preventing the unjust entry of a judgment and to do substantial justice between the parties. Coleman v. Caliendo, 361 Ill. App. 3d 850, 855-56 (1st Dist. 2005) While the first district, in R.M. Lucas Co. v. Peoples Gas Light & Coke Co., 2011 IL App (1st) 102955, ¶ 24, asserts that Vincent overruled the holding in Coleman, the Illinois Supreme Court's recent decision in Warren County explains equitable considerations are appropriate in reviewing a section 2-1401 petition. Warren County, 2015 IL 117783, ¶ 51

69) The Trustee, in his rush to abandon his duties and obligation, and try to disgorge Respondents fees effectively did not allow any time for the Respondent to fully investigate that possibility and basically bullied the Debtor out of pursuing her chapter 13 and where the stay is now no longer in effect and all the debtor's equity, which is still property of the estate, is not exposed and in jeopardy. Yet the Trustee has the nerve to suggest Respondent provided no value to the estate.

70) If the default judgment could be vacated in state court it becomes an open case and the Debtor could defend what amount is owed, and/or possibly remove that action to the bankruptcy court and/or file any appropriate adversary proceedings. Whether it would be contingent or unliquidated at that point would be fact dependent.

*The Relief Sought By The Trustee In The Motion And Proposed Order
Is Not A Proper Cause Under Section 330 Of The United States Bankruptcy Code*

71) The Bankruptcy Code does not grant a bankruptcy court unlimited jurisdiction over fees. § 330 of the Bankruptcy Code applies only to applications for fees to be paid from the debtor's estate. "Importantly § 330 is not applicable to attorney fees derived from a source other than the debtor's estate." *Barron v. Countryman, supra* at 595. Thus, if the fees are to be paid from a source other than the debtor's estate, the bankruptcy court should not and cannot rule

15

on a § 330 fee application concerning those fees. Id. See also, In re McDonald Bros. Constr., Inc., 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990) (explaining that the compensation under § 330 is "necessarily payable from the estate") and In re Westgage Nursing Homes, Inc., No. 13-21665 PRW, 2014 WL 4794899, at *5 (Bankr. W.D.N.Y. Sept. 25, 2014).

72) Under §330, the Court has a duty to examine independently the reasonableness of fees requested. *In re Price,* 143 B.R. 190, 192 (Bankr.N.D.Ill.1992), *aff'd* 176 B.R. 807, *aff'd and remanded* 42 F.3d 1068 (7th Cir.1994); *In re Wyslak,* 94 B.R. 540, 541 (Bankr.N.D.Ill.1988).

73) Still, notwithstanding the standards set forth above, judges should exercise special care in characterizing the services of an attorney as excessive or unnecessary. Judges are often poorly positioned and insufficiently informed to permit a conclusion that what was done for a client was not required in order to protect the client's interests. *In re Freeman,* 2008 WL 80359 (Bankr.D.Mass.).

A Pre-Petition Retainer Paid To Bankruptcy Counsel
Is Not Subject To Court Approval Under Section 330

74) In Barron v. Countryman, supra, the Fifth Circuit addressed the issue of whether a pre-petition retainer paid to bankruptcy counsel was governed by § 330. In holding that such a retainer was not subject to approval by the bankruptcy court, the Fifth Circuit explained that § 330 is only applicable if the funds from which the fees are to be paid are funds belonging to the debtor's estate. Since the retainer was not part of the estate, a § 330 application was neither required nor permissible.

Respondent Is Not Seeking A Fee Award Under Section 330
And Therefore Section 330 Is Not Applicable in Relation To
The Relief Sought By The Trustee Motion And Proposed Order

75) The Trustee's Request To Review Respondents Attorney "Fees Sought" is not proper as Respondent is not seeking attorney fees from the chapter 13 estate.

76) The Trustee maintains that the services provided by Respondent had no value and therefore "*any fee request*" should be denied. Again the Respondent is not making a fee request, has not filed a fee application, and therefore there is no "fee request" to be reviewed by the Court. So what in the world is the Trustee talking about?

77) When an attorney is employed by a bankruptcy estate and renders services in connection with that employment, § 330(a)(1) of the Bankruptcy Code governs the awarding of fees to that attorney. *Lamie v. United States Trustee,* 540 U.S. 526, 529 (2004). An application for compensation under Bankruptcy Rule 2016(a) and court approval of the application under section 330(a) of the Code are necessary only when an attorney is compensated "from the estate." Fed. R. Bankr.P.2016(a); see 4 Keith M. Lundin, Chapter 13 Bankruptcy § 294.1 at 294-1 to -2 (3d ed.2000 and Supp.2007-1). The Debtor made his payment to Respondent before the case was filed. Because the payments were made when no case was pending, Respondent has not bee compensated from the bankruptcy estate. Additionally, Respondent is not employed by a bankruptcy estate under § 330(a)(1) and therefore any review of Respondents fees are not appropriate under § 330(a)(1) even if the case was not dismissed, and certainly is not appropriate under section § 330(a)(1) after dismissal of the chapter 13, which is the situation at hand.

<u>The Trustee Is Attempting To Sanction Respondent With No Authority To Do So</u>

78) Rather than wanting to take care of some overlooked or unfinished detail, what the Trustee really seeks is to have a hearing a hearing on the previous Trustee motion to dismiss for ineligibility, from the previous dismissed chapter 13, and then seek a review of Respondents fees, in spite of the fact that Respondent did not represent the Debtor in that previous case or in her previously filed schedules, nor did Respondent represent the Debtor in the previously filed Trustee motion for ineligibility that the former attorney for the Debtor did not object to

(why would he as it was being dismissed for failure to maintain plan payments). The Trustees attempts to do so in these circumstances are improper.

### Record for Hearing

79) Regardless of the way the fee request comes to the court's attention, the matter must be given the same type of careful consideration required by the rules for any other type of proceeding. *In re* Eliapo, 468 F.3d 592 (9th Cir. 2006) (attorney should have been granted opportunity for a hearing on disputed fees); Thomas v. Bankr. Estate of Jones, 360 B.R. 624 (E.D. Mich. 2007). In the event the court chooses to proceed Respondent is asking that the court provide specific reasons in writing for any such order, set a discovery schedule and date for evidentiary hearing.

**WHEREFORE,** the Respondent hereby request this Honorable Court for the entry of an order denying the Motion of the Trustee, and for such other and further relief as may be appropriate and proper under the circumstances.

Dated this 2nd Day of February, 2018                    Respectfully submitted,


                                                        By: /s/ J. Kevin Benjamin
                                                            J. Kevin Benjamin

J. Kevin Benjamin, Esq.
Benjamin | Brand | LLP
1016 West Jackson Blvd.
Chicago, Illinois 60607-2914
Phone: (312) 853-3100
ARDC #: 6202321